IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DORAN MAURICE SMITH                                          PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:11cv615-MTP

HINDS COUNTY BOARD OF SUPERVISORS, ET AL.            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the court on the Defendants' Motions for Summary Judgment [38][42]. Having reviewed the submissions of the parties and the applicable law, the court finds that the Motions [38][42] should be granted and that this action should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Doran Maurice Smith, proceeding *pro se* and *in forma pauperis*, filed his civil rights complaint [1] on September 30, 2011. Plaintiff's claims occurred while he was incarcerated at the Hinds County Detention Center (the "Jail") as a pretrial detainee. Pursuant to his change of address, it appears Plaintiff is no longer incarcerated. *See* Notice of Change of Address [54]. As set forth in his complaint [1], and as clarified during his *Spears*[1] hearing, Plaintiff asserts a claim against Defendants for the denial and/or delay of adequate medical treatment in violation of the Fourteenth Amendment.[2] Specifically, he claims he has been

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on March 30, 2012. The transcript from Plaintiff's *Spears* hearing is attached as Exhibit A to Defendant's Motion for Summary Judgment [38] and is cited herein as "Tr. [38-1] at __." *See* Transcript [38-1].

[2] "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare*, 74 F.3d at 648 (holding that the subjective deliberate indifference standard applies to both pre-trial

seeking treatment for "boils" on his shoulder since late January of 2010. Plaintiff alleges his medical requests are only answered some of the time, and when his requests are answered, he is only given pain pills and antibiotics, which helps with the pain but does not resolve the problem. He believes the boils have caused an infection in his body and are causing him to have headaches.

Plaintiff stated that he sued the Hinds County Board of Supervisors because it is in charge of the Jail and is responsible for what goes on there. He sued Nurse Cassandra Kingston because she is the supervisor in charge of the nurses at the Jail; however, he has never met her or been treated by her.

Plaintiff sued Dr. Robert Tatum because he allegedly failed to properly treat his condition. Plaintiff claims that he has seen Dr. Tatum approximately four times, and he only put him on medication and sent him back to his cell; he allegedly told Plaintiff nothing else could be done for him. Plaintiff sued Tyrone Lewis because he is the Sheriff and is in charge of the Jail.

Plaintiff seeks monetary damages for pain and suffering and wants his medical condition properly treated.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a

---

detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment).

question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*,

828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004), *cert. denied*, 543 U.S. 864 (2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). The Fifth Circuit has recognized that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even

4

laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment. *Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir.1996)); *see also Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) ("This Court has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care.").

A prison official may not be held liable under this standard pursuant to Section 1983 unless the Plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756).

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d

5

191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The records reflect that Plaintiff first complained about bumps or boils on his back on January 10, 2010. He was seen by medical staff, C. Allen, that same day was assessed with a rash and abscesses on his back and neck. He was given ibuprofen and antibiotics, had blood drawn for lab work, and was referred to the doctor. *See* Ex. B to Motion [38-2] at 11, 34, 38, 61-62. Dr. Tatum saw Plaintiff the next day and found that he had three swollen nodes on his back and a follicular eruption, an inflammation of one or more hair follicles. Dr. Tatum prescribed Motrin to Plaintiff. *Id.* at 39; Exhibit D to Motion [38-4] at ¶ 3.

Plaintiff submitted a sick call request regarding the bumps on January 18, 2011. *See* Ex. B to Motion [38-2] at 13. Plaintiff was seen by Dr. David Williams on January 25, 2011, after an altercation, but made no complaints about the boils/bumps. *Id.* at 21, 40.

Plaintiff saw Dr. Sutton on April 15, 2011 complaining of the bumps on his shoulder. He was assessed with folliculitis and was given Motrin, antibiotics, and other medication. *Id.* at 22, 40. Plaintiff had follow-up appointments with Dr. Sutton on April 29, 2011, and June 1, 2011; he was assessed with folliculitis and a keloid to his right shoulder. He was given Motrin, antibiotics and other medication. Dr. Sutton noted on the June 1, 2011, appointment that Plaintiff needed to be scheduled for a surgery referral for the keloid. *Id.* at 23-24, 40-41.

Plaintiff again saw Dr. Sutton on July 1, 2011, and July 20, 2011; he was assessed with a keloid on his right shoulder. He was prescribed medication and again referred for surgery. *Id.* at 25-27, 43.

On August 23, 2011, Plaintiff saw Dr. Tatum for a follow-up appointment for the lesions on his right shoulder. Dr. Tatum prescribed pain medication and referred Plaintiff to a general surgeon to examine the lesions. *Id.* at 28-29, 45; Ex. D to Motion [38-4].[3]

On October 6, 2011, Plaintiff saw Dr. Fiser at Central Surgical Associates, PLLC. Dr. Fiser recommended excision of the two subcutaneous masses/skin lesions. *See* Ex. B to Motion [38-2] at 72, 73; Ex. C [38-3]; Ex. D [38-4].

Plaintiff submitted a sick call request regarding the bumps on December 15, 2011, approximately three months after filing this action. He was seen by a nurse, who noted he was not presently in pain, and she stated she would obtain records from his outside referral on October 6, 2011, and follow-up with the doctor. Ex. B to Motion [38-2] at 17.

On December 27, 2011, Plaintiff saw Dr. Tatum for the lesions on his right shoulder and he again referred him for general surgery. Ex. B to Motion [38-2] at 32-33, 46; Ex. D [38-4].

Plaintiff saw Dr. Sutton on March 21, 2012, pursuant to a sick call request dated March 17, 2012, for various ailments, including pain for bumps on his back. Dr. Sutton noted the keloids on his back and prescribed Motrin and other medications. *See* Ex. B to Motion [38-2] at 77-79.[4]

---

[3]The record also contains an undated request regarding pain from the boils/lesions and headaches. Plaintiff was given ibuprofen and it was recommended that he be scheduled for a surgery referral. Based on Plaintiff's statement that he had had the problem for eight to ten months, it is estimated the record was completed between August and October 2011. Ex. B to Motion [38-2] at 15.

[4]The records attached to Defendant's Motion [38] stop at March 21, 2012.

7

*Dr. Robert Tatum*

As previously stated, Plaintiff sued Dr. Robert Tatum because he claims he failed to properly treat the Plaintiff's condition. Plaintiff claims that he has seen Dr. Tatum approximately four times, and he only put him on antibiotics and pain medication and sent him back to his cell; he allegedly told Plaintiff nothing else could be done for him. Tr. [38-1] at 12-16.

Dr. Robert Tatum is employed by the Reddix Group, who contracts with Hinds County to provide treatment to inmates at the Jail. Based on the evidence before the court, including Plaintiff's medical records and Dr. Tatum's affidavit, Dr. Tatum never refused to treat Plaintiff and never ignored his complaints or delayed or interfered with Plaintiff's treatment. *See Davidson*, 91 F. App'x at 965. Rather, Dr. Tatum treated Plaintiff with medication and referred him for general surgery twice. Dr. Tatum sent his and Dr. Fiser's surgery recommendations to the Hinds County Sheriff's Department. Dr. Tatum's sworn affidavit reflects that Plaintiff would be sent for surgery once it was authorized by the Hinds County Sheriff's Department. Dr. Tatum further stated that the two lesions on Plaintiff's back are not life threatening and do not pose a serious risk to his health. *See* Ex. D to Motion [38-4].

Plaintiff's disagreement with Dr. Tatum's medical treatment does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292. Likewise, Plaintiff's allegations in his Responses [46][51] that Dr. Tatum was careless with his treatment and is guilty of medical malpractice do not amount to deliberate indifference. *See Daniels*, 474 U.S. at 333; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference . . . ."). There is no genuine issue of material fact that Dr. Tatum was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Dr. Tatum is entitled to judgment as a matter of law.

*Nurse Cassandra Kingston*

Plaintiff testified that he sued Nurse Cassandra Kingston because he "was told that she was the head over the nurses in the [Jail]." Tr. [38-1] at 10-11. However, he admitted that he has never met her or been treated by her. He further stated that he has no information to show that Nurse Kingston is responsible for his care. *Id.* at 11-12.

Plaintiff has failed to establish a genuine issue of material fact as to whether Nurse Kingston was deliberately indifferent to his serious medical needs. She had no personal involvement with his medical care and he has put forth no summary judgment evidence to show that she was responsible for denying, delaying, or interfering with his medical treatment. Even if Nurse Kingston did hold a supervisory position over the nurses at the Jail,[5] he has failed to show a sufficient causal connection between Nurse Kingston's alleged wrongful conduct and the alleged constitutional violation. *See Thompkins*, 828 F.2d at 304. Indeed, Plaintiff does not allege any specific denial or delay of treatment by any particular nurse at the Jail. Accordingly, Ms. Kingston is entitled to judgment as a matter of law.

*Sheriff Tyrone Lewis and the Hinds County Board of Supervisors*

Plaintiff stated that he sued the Hinds County Board of Supervisors because it is in charge of the Jail and is responsible for what goes on there. Likewise, Plaintiff sued Tyrone Lewis because he is the Sheriff and is in charge of the Jail. Plaintiff testified that he had no personal contact with Sheriff Lewis or the Hinds County Board of Supervisors about his medical condition. Tr. [38-1] at 16-17.

Dr. Tatum's affidavit reflects that he sent his and Dr. Fiser's surgery recommendations to the Hinds County Sheriff's Department, and that Plaintiff would be sent for surgery once it was

---

[5]Defendants do not expound on Nurse Kingston's employment position in their Motion [42] or Memorandum [43], but note that she was deployed overseas for a portion of the relevant time period.

9

authorized by the Hinds County Sheriff's Department. *See* Ex. D to Motion [38-4]. It is unclear why Plaintiff's surgery was not approved before he was released; Defendants do not address it in their Motion [42] or Memorandum [43]. Nevertheless, Plaintiff has failed to show or allege that Sheriff Lewis was personally involved in his medical treatment and has failed to show that Sheriff Lewis was aware of an excessive risk to Plaintiff's health or safety and disregarded it. *See Farmer*, 511 U.S. at 838; *Thompkins*, 828 F.2d at 304; *see also Horn v. Vaughan*, 469 F. App'x 360, 363 (5th Cir. 2012) (affirming summary judgment in favor of sheriff, reasoning that plaintiff spoke with the sheriff on only one occasion about his medication and the evidence did not indicate that the sheriff was aware that his deputy was ignoring plaintiff's requests for treatment). Indeed, as reflected in Dr. Tatum's sworn affidavit, the two lesions on Plaintiff's back are not life threatening and do not pose a serious risk to his health. *See* Ex. D to Motion [38-4]. Moreover, Plaintiff has failed to establish that Hinds County and/or it's Board of Supervisors had a policy, custom or practice that was the "moving force" behind the alleged deliberate indifference. *See Monell*, 436 U.S. at 694.

IT IS, THEREFORE, ORDERED:

That the Defendants' Motions for Summary Judgment [38][42] are GRANTED and that this action is dismissed with prejudice.[6]

A separate judgment will be filed herein in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED AND ADJUDGED this the 24th day of September, 2012.

s/ Michael T. Parker
United States Magistrate Judge

---

[6]Because the court concludes that there is no genuine issue as to whether Defendants violated Plaintiff's constitutional rights, it declines to address their arguments regarding qualified immunity and exhaustion.